IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF

ALBANY NY DIVISION



U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
OCT 15 2019
AT_____ O'CLOCK_____
John M. Domurad, Clerk - Syracuse

| | | |
|---|---|---|
| ERNESTINE WELCH,<br>PLAINTIFF, | §<br>§<br>§ | |
| VS. | § | CASE NO. __1:19-CV-00846__ |
| BIO-REFERENCE LABORTORIES INC,<br>DEFENDANT, | §<br>§<br>§<br>§<br>§ | JURY TRAIL:    (YES) |

**COMPLAINT FOR A CIVIL CASE**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Ernestine Welch ("Welch" or "Plaintiff"), pro se, complains of Defendant, Bio-Reference Laboratories company, in support thereof would show as follows:

### I.    JURISDICTION, PARTIES, AND VENUE

1. This court has jurisdiction over the cause of action alleged by plaintiff pursuant 28 U.S.C ₴ 1331 and Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and 42 U.S.C. ₴ 1981 ("Section 1981"), and the related anti regulations set forth by Title VII and Section 1981.

2. Plaintiff Ernestine Welch ("Welch" or "Plaintiff") P.O. Box 273 Hudson, NY 12534 (mailing address), and 538 Main Street Catskill, NY 12414 (physical address). Welch is a female, African-American, individual who is 41 years old with 8 years of service.

3. Defendant Bio-Reference Company is a business entity whose principal place of business is New Jersey, but which conducts business throughout New York State. Bio-Reference provides testing and related services to physicians, clinics, hospitals, long-term facilities, employers, government units, correctional institutions and more.

Defendants may be served via Certified Mail Return Receipt through their Executive Chairman, Jon R. Cohen, M.D. and President, Geoff Monk, at 481 Edward H. Ross Drive Elmwood Park, NJ 07407. As well as Bio-Reference Management Supervisors, Terry Tucker, Supervisor, Jean Vought, Lead Phlebotomy Supervisor, and Christopher Villaruel, HR director.

## II.    Background

4. Plaintiff previously filed suit against the company for discrimination, retaliation, and hostile work environment. The suit was filed for wrongfully disqualifying plaintiff from position at location in Coxsackie, NY- thus forcing her to change jobs and disqualifying her to continue employment with any NYS DOCCS Facilities.

    Plaintiff is a contract Phlebotomist employed by Bio-Reference Laboratory Corporation of America, but provided weekly service at Coxsackie Correctional since 2010. Plaintiff worked Monday and Wednesday in RMU of the prison, and Tuesday and Thursday's in Clinic area of prison. On Fridays plaintiff worked at Greene CF. Plaintiff hours of work were from 7am till 11am or until work was completed. Plaintiff always reported all work, and concerns about phlebotomy orders or call-outs to charge Nurse Bill Cornelison, (in clinic area) who was assigned to oversee phlebotomy call-outs and schedules, who then reported off to medical director if any concerns. Plaintiff, worked with Bill Cornelison for many years before Lisa Mazza took position.

    Lisa Mazza, Medical Director, moved her office out of the nursing station to a hallway office across from Plaintiff's Phlebotomy room to watch. From this position, she began seeking ways to damage plaintiff's employment record.

5. Lisa's behavior and dislike for plaintiff was known by fellow co-workers this was often brought to the plaintiff's attention. Front desk officer made plaintiff aware that Lisa called Daly to check her clock in times, even on days when plaintiff was working in RMU area. Nursing station staff made plaintiff aware that Lisa would question staff about plaintiff activity for the day. Lisa started her work day at 8-8:30am but target plaintiff activity as her 1st mission of her day. In evidence there's an E-Mail on August 23, 2018 from Lisa Mazza to Dep. Blaise, stating FYI, as for front gate, Ernestine signed in this morning at 07:10am.

6. Lisa, had created a hostile environment, due to her dislike for plaintiff. Lisa created an environment where staff could come to her to report any negative activity pertaining to plaintiff. Lisa questioned staff on all and anything pertaining to plaintiff work history. In evidence on February 06, 2018, is an E-mail from Lisa, Mazza to Dep. Blaise, and plaintiff supervisor Terry Tucker, which stated that" yesterday our area Sargent, Sgt. Slaven come to me expressing concern that Ernie did not come in until 08:45. This negatively

2

impacts the structure of the day. I believe she was scheduled for the Corizon (RMU) area". On this day Plaintiff had made Arrangements with Supervisors in RMU area in regards to being late, unknown to Lisa Mazza.

7. Lisa, even questioned plaintiff workman's comp medical history or status and complained when accommodations were made for plaintiff to attend medical appointments, or when she was late due to Pain Management injections/ treatments. In evidence, on Thursday, December 14, 2017, is an E-mail from Lisa to Terry, questioning my Workman's Comp claim. Plaintiff had reported to Charge Nurse Bill Cornelison, in regards to her absence or being late due to her Wednesday evening appointment with Pain management.

   Plaintiff was under Workman's Comp Treatment from incident on May 15, 2014 until February 13, 2019, for left neck/shoulder injury. Plaintiff had restrictions of driving distance, bending, heavy lifting, standing for long periods of time, along with restricting side effects from prescribed medications.

8. On August 21, 2018, plaintiff was finishing up work when Lisa Mazza approached the assigned officer stationed outside plaintiff's lab room. Lisa pointed toward plaintiff and questioned officer in regards to plaintiff. Plaintiff approached the conversation that was being held in her presence. The officer refused to address Lisa's questions and walked away stating, "he wants no part of this." Plaintiff was upset that Lisa was addressing any issues she had with plaintiff with co-workers in her presence. Lisa failed to address any issues she had with plaintiff directly, Lisa did not speak to or greet plaintiff. Lisa only spoke to co-workers' about her issues or concerns that she had with plaintiff. Lisa made the plaintiff's environment unwelcome. Plaintiff was intimidated by Lisa's on- going unfriendly work environment. On this day, Plaintiff decided to report the ongoing behavior to the superintendent.

   Plaintiff was the only African-American female working under Lisa Mazza's, Supervision weekly on Tuesdays and Thursday in the State Clinic area of Coxsackie CF.

9. Terry Tucker, Supervisor of Plaintiff, was upset because plaintiff went above her authority to report harassment and intimidation demonstrated by Lisa to single her out in front of other staff to Superintendent, Raymond J. Shanley, on August 21, 2018. Terry immediately contacted Plaintiff via phone after Terry and Jean received texted messages from Plaintiff in regards to allegations that were reported to the Superintendent. Terry was very upset with plaintiff for reporting these "serious allegations."

10. Terry and Jean were fully aware of prior problems and concerns Plaintiff had in regards to Lisa Mazza's nit-picky weekly e-mails allegations, unfriendly, unwanted, and hostile work environment.

11. In March 2018, plaintiff was notified by her Lead phlebotomist supervisor Jean Vought, (who was currently on lock-out orders of NYS Corrections facility's due to her failed background check), that she had to submit a background check through the facility. The initial background check was processed in March 2018.

12. On August 24, 2018, plaintiff received an immediate schedule change, which forced her to drive to Wallkill CF. This was over an hour drive opposed to the ten minute drive plaintiff had to Coxsackie facility. The new schedule still included her regular scheduled days in the RMU medical unit of Coxsackie on Mondays and Wednesdays. Plaintiff signed the new schedule contract but was upset that these changes were made due to reporting Lisa's harassment, which plaintiff stated on the contract.

13. On October 01, 2018, upon plaintiff leaving the Coxsackie facility, plaintiff received a lock-out order from the front desk officer that took effect immediately. Before leaving the facility, plaintiff immediately contacted Superintendent Shanley and Dep. of Medical Blaise, who both stated "it was due to previous background check that was done back in March of 2018, but was unaware what had effected the lock-out order."

14. Plaintiff was terminated from Bio-Reference Laboratory Corporation of America on October 03, 2018 via phone call from HR director, Christopher Villaruel.

15. On two different occasions plaintiff sent Certified Mail Return Receipt to Coxsackie Correctional Facility, Bio-Reference Lab, and NYS Diversity Management Complaint, on October 10, 2018 and November 08, 2018 requesting further information on what had affected her employment all letters and phone calls were void. No responses to date. New York Consolidated Laws, Correction LAW- COR ₴ 754. (Written statement upon denial of license or employment.) Case 1:15-cv-06261, Eric Keels v. Geo Group, Inc.

16. On October 29, 2018, plaintiff filed an investigation with the Division of Human Rights, based on unknown factors of background check termination.

17. On November 28, 2018, Acting Commissioner, Anthony Annucci responded to a recent letter plaintiff sent to Governor Cuomo on October 04, 2018, which "stated that plaintiff failed to report both inmates and parolee associations."

4

18. On December 21, 2018, plaintiff received a response letter to a Foil request that she submitted, Foil Log No. 18-12-011, which states "the records requested do not exist."

19. On April 22, 2019, plaintiff received a Determination Order of Investigation from the Human Rights Division stating "NO PROBABLE CAUSE."

20. On April 30, 2019, plaintiff submitted a Request of Review of Action by EEOC.

21. On June 21, 2019, plaintiff received Notice of Suit Rights, Title VII from EEOC.

22. On July 16, 2019, plaintiff filed suit with the Northern District Court of New York.

### III.  Facts

1. Plaintiff received, in evidence, an e-mail from August 21, 2018, between Lisa Mazza and Terry Tucker that states "they are working on moving Ernestine out of Coxsackie and scheduling a different tech. As soon as we can make the replacement she will be gone, Ernestine is unaware of this."

2. In evidence, on June 05, 2018, Jerome Dawson, Coordinator of Employee Investigations Unit was aware of plaintiff criminal history record. After complaint on August 21, 2018, Mr. Dawson used the same information to determine my termination on September 28, 2018.

3. On September 28, 2018 at 4:31am, a Saturday morning, Kelly Ahearn, sent a deny access for plaintiff to Jerome Dawson via cell phone.

4. Jean Vought, Lead Phlebotomist, was given the opportunity to fix her lock-out order and continue her employment with NYS DOCCS. Plaintiff was never given this opportunity to fix or clarify, (fact finder), information obtained on background check. Plaintiff has had no DOCCS visitation records since she has been employed with DOCCS. Plaintiff had previous background checks done with no complaints. Plaintiff had provided 18 years of service to Coxsackie Correctional Facility.

   Plaintiff also provided Phlebotomy services to Greene CF, Hudson CF, Wallkill CF, Downstate CF, and nursing home all while being employed with Bio-Reference with no complaints.

5. Jean Vought's step-daughter Ashley Hasbrouck took over plaintiff's position after she was terminated.

6. Plaintiff has never been written up nor has had any complaints regarding plaintiff's work until Lisa Mazza took position at Coxsackie in 2017. Plaintiff has worked at Coxsackie

5

Correctional facility under different work titles since 2000. Plaintiff often works under different supervisors other than Lisa throughout her weekly schedule, with no complaints.

7. Plaintiff's initial background check was done in March by correctional officer Thorpe, who collected her finger prints and Criminal History Details questions. In evidence, on June 05, 2018 a Criminal History Request Detail (Computer Generated Form) was submitted by Nicole Persico-Harris, Secretary 1,( unaware who this person is?).

8. On October 03, 2018, plaintiff was formerly dismissed from service. No exit letter was ever provided, no opportunity to relocate, and no severance pay was given. Plaintiff was simply let go due to retaliation of complaint made on August 21, 2018.

    Plaintiff was subjected to an adverse employment action and that there was causal connection between her "protected activity" and that adverse action.

    Plaintiff was also subjected to unwelcome communications and conduct based on race that unwelcome conduct created an, "intimidating, hostile, or offensive work environment. That Lisa Mazza and Terry Tucker are "legally responsible for that offensive environment that the plaintiff suffered damages based on the "unwelcome communications" and that she suffered "adverse employment action."

    Lisa Mazza's weekly harassment was so frequent and severe that it created a hostile, offensive work environment. Plaintiff was made to answer to all complaints and allegations that Lisa set forth against her weekly.

## DAMAGES

9. Defendant's conduct constitutes violations of statutory and or common law. Such unlawful conduct seriously affected Plaintiff in her occupation. Due to Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer; financial loss, lost wages in the past and future lost health insurance and related benefits in the past and future; reputational harms; emotional suffering in the past and future, humiliation, mental anxiety, stress; loss of enjoyment of life; and all economic and compensatory relief to which she may show herself justly entitled, punitive damages, pecuniary damages, attorney' fees and costs of court, pre and post judgment interest in the maximum amounts allowed by law pursuant to Title VII of the Civil Rights Act or 1964 and 1991, as amended and codified at 42 U.S.C ₴ 2000e et seq.

Respectfully submitted this October 10, 2019

*Ernestine Welch* 10/10/19
Ernestine Welch, Plaintiff pro se